## HAVENS *v.* SMITH *et al.*

*(Supreme Court of Colorado, December Term, 1882—Appeal from the District Court of Gilpin County).*

1. AMOUNT OF DAMAGES IN REPLEVIN. In an action in replevin brought in the County Court and appealed to the District Court, it is not error to render judgment for a greatei sum in damages than prayed for in the complaint—the proof showing that the value of the use of the property pending the litigation was equal to the damages awarded. Such judgment is authorized by Sec. 147, Civil Code.

2. MORTGAGED PROPERTY—MORTGAGEE AND PURCHASER—POSSESSION. A mortgagor having delivered possession of the property to the mortgagee, may not thereafter obtain possession of such property without the consent of the mortgagee, and sell and deliver it to a third party. In such case the mortgagee can recover the property from the purchaser by action in replevin—especially when the latter had notice of the mortgagee's mortgage and possession.

3. SAME—INSTRUCTIONS. In such case it is proper to instruct the jury that if the defendants, or either of them, had such knowledge or notice, and purchased the property with intent to defraud the mortgagee of his claim thereon, such purchase was fraudulent and void as against the mortgagee.

4. POSSESSION by an agent is the possession of his principal.

STONE, J. This was an action in replevin by appellee in the Court below for the recovery of two mules and harness and a wagon, of the alleged value of $400, the appellee claiming under a chattel mortgage, and appellants claiming under a bill of sale from the mortgagor, made subsequent to the mortgage.

It appears from the evidence that on the 17th of April, 1877, one Forbes, the mortgagor, being indebted to appellee in the sum of $934.77, gave his note for that amount, payable in installments, the last of which became due December 1, 1877, and to secure the same, executed a chattel mortgage of the property in controversy.

Forbes was engaged in the business of supplying wood to the ore mills and smelters at Black Hawk, and the team and wagon in question were used in hauling and delivering such wood. The earnings of the team thus used were applied on the note. The mortgage, which was duly acknowledged and recorded, contained a provision that until default in the payment of the note, the property might remain in the possession

of Forbes, the mortgagor. On the 3d of November, several installments of the note being due and unpaid, Havens proposed to Forbes that the property should be delivered to him, Havens, who should hire a teamster to drive and take charge of the team, and haul the wood; that Havens should pay the teamster, and also pay the expenses of keeping the team, and the repairs of the wagon and harness, and should settle with the persons to whom the wood was delivered, collect and receive the money therefor, and credit the same on the amount due on the note, less the expenses; that Forbes, upon such delivery of possession to Havens, was to waive the right of advertising and sale of the property mortgaged. That Forbes, with another team, was to sled the wood out of the timber to where it could be reached by the wagon, and thus work in connection with the teamster employed by Havens. This proposition seems to have been agreed to by Forbes, and thereupon Havens engaged one Marshal, who had been previously working in the same capacity for Forbes, to take charge of and work the team. Marshal entered upon and continued in this employment, Havens paying all expenses, and collecting all the proceeds of the wood, which was delivered in Havens' name, until the 13th of December, when Forbes, having obtained possession of the team and wagon at a place some distance from town, sold and delivered them to appellants. The consideration of this sale was a pre-existing debt in the sum of $550, which Forbes was owing on account to appellants, Smith & Temple, who were business partners.

The suit was brought by Havens to recover possession of the property from Smith & Temple. Upon trial the jury found for Havens, who had judgment for possession accordingly.

The first error assigned is, that the Court rendered judgment for a greater sum as damages for the detention of the property than was prayed in the complaint.

There was no error in this. Appellee sued in the County Court for possession, alleging certain damages for detention; the appellants gave bond and retained possession; appellee recovered in that Court, and appellants appealed to the District Court, all the while retaining the property. The judgment in

the District Court for the damages was based upon the evidence as to the value of the use of the property detained up to the time of rendering judgment. This was proper, and within the provisions of Sec. 147 of the Civil Code of Procedure. 3 Waite's Practice, 607.

The second assignment scarcely deserves notice. The defendants below could not be prejudiced by allowing the plaintiff to show the consideration of the note for which the mortgage was given, and the admission of such evidence was not error.

The other assignments go to the instructions given to the jury, and to certain instructions prayed by appellants, and refused by the Court.

These instructions, which are numerous and lengthy, we do not deem necessary to quote and review, since no general principle of law is involved therein which is not familiar to the profession.

The jury were instructed in substance that if they believed from the evidence that prior to the maturity and payment of the note, Forbes, the mortgagor, delivered the mortgaged property into the possession of Havens, the mortgagee, and that Havens continued to hold possession of the same, and that afterwards, although subsequent to the maturity of the note, Forbes became possessed of the property without the knowledge or consent of Havens, and, while so in possession, sold and delivered the same to the defendants, and that the defendants, or either of them, at the time had knowledge or notice of the claim of Havens, then the plaintiff was entitled to recover.

They were further instructed that if the defendants, or either of them, had such knowledge or notice, or purchased the property with intent to defraud Havens of his claim thereon, then such purchase was fraudulent and void as against the said plaintiff.

They were further instructed that if Havens, after delivery of possession to him, employed Marshal as his teamster to have charge of the property and use it for Havens, subject to his control and for his benefit, and that in pursuance of such engagement, Marshal so took and held possession of the property, that such possession of Marshal, as agent of Havens, was a possession by Havens.

The jury were also fully instructed as to what constituted a necessary delivery and possession in such case; as to what constitutes a *bona fide* purchaser, and as to the application of the statute of frauds affecting creditors and *bona fide* purchasers. All the points in the case were fully elaborated in the charge, and the instructions were certainly as favorable to the defendants as the evidence and the law applicable thereto would warrant. All the instructions refused by the Court which could properly have been given, were embodied in those given.

Counsel for appellants objects to the instructions referring to the character of their purchase, in that it impliedly questions the *bona fides* of the transaction, while it is claimed there is no evidence to support such instruction.

It appears in evidence that on the day the property was delivered by Forbes to appellants, Temple went out some distance from town and met Forbes who was driving the team on the road coming into town; that they stopped upon meeting, and Temple produced a bill of sale written out and ready for signing, conveying the property from Forbes to Smith & Temple; that Forbes signed the bill of sale; Temple delivered to Forbes a receipted bill for $550 due from Forbes to Smith & Temple on account, and then Temple, as he himself testifies, "jumped on the wagon and drove down to town." It was also in evidence that Temple at that time knew of the mortgage, and of Havens' claim upon the property. This and other evidence on this point certainly warranted the instructions touching the character of the sale, and whether the appellants occupied the position of *bona fide* purchasers.

The question of the delivery of possession of the property by Forbes to Havens under the mortgage on the 3d of November, and the taking and continuing in actual possession by Havens thereafter, up to the date of Forbes getting possession and delivering to appellants, on the 13th of December, was made the principal point in controversy in the trial below, as well as in the argument of counsel here.

This was a question of fact to be determined by the jury; and under proper and full instructions from the Court thereupon, the jury determined this question.

In addition to the other testimony as to Havens' possession

of the property, three witnesses testified that in separate conversations with Forbes during the months of November and December, Forbes stated that Havens had taken possession under his mortgage; that Havens had taken the teams away from him; that they then "belonged to Havens," and that "Havens was boss of them now."

From all the testimony bearing upon the point, sufficient appears to warrant the conclusion that Havens' possession of the property was continuous and unimpaired from the 3d of November up to the 13th of December; that on this last mentioned day, Forbes took possession of the team and wagon, early in the morning, at the stable where they were then kept, several miles from Black Hawk, and delivered them to the defendants shortly after, by placing them in possession of Temple, one of said defendants, who went out on the road and met Forbes for that purpose; that the only possession which Forbes had of the property from the 3d of November to the time of the delivery to defendants, was on that day, when he took possession for the purpose only of delivering them immediately to defendants; and that this was all in pursuance of a pre-arrangment and collusion between the defendants, Forbes and the driver Marshal.

There was some conflict in the testimony on this point, but of the credibility of the witnesses, and the weight of testimony in such case, the jury were the sole judges, and being rightly instructed in the law applicable thereto, the verdict will not be disturbed in this Court.

Perceiving no error in the record, the judgment will be affirmed.

*L. C. Rockwell, H. M. Orahood, J. McD. Livesay,* for appellants.
*W. B. Mills,* for appellee.